**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **TANYA TEEGARDEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.: 4:18-CV-00554-SRB** |
| **v.** | ) | |
| | ) | |
| **GOLD CROWN MANAGEMENT, LLC; AND NEVIN DEWAR** | ) | |
| | ) | |
| **Defendant.** | ) | |

**SECOND AMENDED COMPLAINT OF TANYA TEEGARDEN FOR DAMAGES FOR NATIONAL ORIGIN & DISABILITY DISCRIMINATION, HARASSMENT, HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII AND § 1981**

**COMES NOW** Plaintiff, Tanya Teegarden, and for her cause of action against Gold Crown Management, LLC, and states as follows:

## PARTIES

1. Tanya Teegarden ("Ms. Teegarden" or "Plaintiff") resides at 5204 NE Barnes Ave, Kansas City, Missouri 64119. She is Caucasian.

2. Ms. Teegarden is a former employee of Gold Crown Management, LLC who worked as leasing agent and manager for approximately three years.

3. Ms. Teegarden was classified as a part-time hourly independent contractor through periods in 2016, January 2017 through January 2018.

4. Over the course of her employment Ms. Teegarden was paid a base hourly rate of approximately $9.00-$13.00 per hour.

5. At the time of filing, Gold Crown Management, LLC ("GCM" or "Defendant") is a Kansas Limited Liability Company.

6. GCM is an employer within the meaning of Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. Sec. 1981(a).[1] It is also an employer within the meaning of Title VII because it employs fifteen ("15") or more individuals.

7. At all times relevant, GCM owned of multiple apartment complexes, including: (1) Gladstone 180, LLC d/b/a Prospect Studios in Gladstone, Missouri; (2) Torries Chase, LLC d/b/a Villas of Murlen in Olathe, Kansas; (3) 79th and Metcalf Apartments, formerly known as the Park Apartments in Overland Park, Kansas; and (4) Mission Studios in Mission, Kansas.

8. Upon information and belief, Nevin Dewar resides in Kansas. At all times relevant Nevin Dewar was part owner of GCM and apartment complexes owned by GCM. Upon information and belief, Nevin Dewar is of Indian descent.

9. At all times relevant Vijay Dewar was part owner of GCM and apartment complexes owned by GCM. Upon information and belief, Vijay Dewar is of Indian descent.

**JURISDICTION & VENUE**

10. Ms. Teegarden's Complaint against Defendants is brought pursuant to the ADA, ADAAA, Title VII and § 1981 based on the discriminatory, harassing conduct of Defendants and the failure of GCM to properly investigate, address and remedy illegal national origin and disability discrimination, harassment, hostile work environment and retaliation. As such, this Court has original jurisdiction over Plaintiff's ADA, ADAAA, Title VII and § 1981 claims pursuant to 28 U.S.C. § 1331.

---

[1] Section 1981 does not require administrative exhaustion and the statute of limitations is at least four (4) years.

11. Venue in this District is proper pursuant to 28 U.S.C. § 1391 because GCM operates within this District and a substantial part of the unlawful conduct giving rise to Plaintiff's claim occurred in this District.

12. The matter was assigned EEOC Charge No. 563-2018-01554. (A copy of the EEOC Charge is attached as **Exhibit A**).

13. On or about May 15, 2018, the EEOC issued Ms. Teegarden a Right to Sue letter ("RTS"). (A copy of the RTS is attached as **Exhibit B**).

14. Ms. Teegarden's Complaint was filed within ninety days of the issuance of the EEOC RTS.

15. Ms. Teegarden has exhausted her administrative remedies against Defendant regarding her claims of race, national origin, disability discrimination, harassment, hostile work environment and retaliation.

## GENERAL ALLEGATIONS

16. In or around August 2015, Ms. Teegarden was hired part time as a leasing agent by The Park LLC, owned by Vijay Dewar and Nevin Dewar.

17. On Ms. Teegarden's application for employment she indicated that she had been diagnosed as Bipolar and suffered from post-traumatic stress disorder.

18. After approximately three weeks of working for Defendant she was made manager and given a company car.

19. Ms. Teegarden was only paid $9.00 an hour and did not receive any benefits.

20. Ms. Teegarden notified Vijay Dewar and Nevin Dewar, owners of The Park LLC that she could only work twenty hours a week due to her disability.

21. Ms. Teegarden complained to Vijay Dewar and Nevin Dewar that the vehicle had issues.

22. After multiple complaints, Vijay Dewar and Nevin Dewar never repaired the vehicle and ultimately, the car caught fire while Ms. Teegarden was taking the car through the car wash.

23. Once Ms. Teegarden notified Vijay Dewar and Nevin Dewar about the fire, Nevin Dewar yelled and cussed at her blaming her for the fire.

24. Throughout the first four months of Ms. Teegarden's employment at The Park LLC, Nevin Dewar would scream and cuss at Ms. Teegarden.

25. Throughout the first four months of Ms. Teegarden's employment at The Park LLC, Vijay Dewar would put her in situations to make Nevin Dewar mad at her which would cause him to scream and cuss at her.

26. Throughout the first four months of Ms. Teegarden's employment at The Park LLC, Ms. Teegarden was constantly expected to work more than the twenty hours, even though she was only part-time and had requested part-time due to her disabilities.

27. After the fire, Ms. Teegarden saw her doctor and was prescribed anxiety medication and instructed to take a week off work due to the amount of stress she was experiencing from Nevin Dewar.

28. When Ms. Teegarden reported to Vijay Dewar and Nevin Dewar that her doctor told her to take time off work, she was told if she took off work she would be fired.

29. On January 5, 2016, Ms. Teegarden went to pick up her payroll check and turned in her doctor's note. Vijay Dewar would not talk to Ms. Teegarden and there were people at the office interviewing even though there was not a position open at that time.

30. Ms. Teegarden attempted to hand her doctor's note to Nevin Dewar and he refused to accept it. Later that day, Nevin Dewar called Ms. Teegarden and told her, "I'm going to tell you what I tell all of my girlfriends, don't call us we will call you." At this time, Ms. Teegarden was no longer employed by The Park LLC.

31. In April 2016, Ms. Teegarden was contacted by Vijay Dewar and offered a position at Gladstone 180 LLC d/b/a Prospect Studios as a part-time manager for $10.00 an hour. However, Ms. Teegarden would not be considered an employee of GCM, but as an independent contractor.

32. The manager for Prospect Studios was getting ready to leave on a two month vacation and Ms. Teegarden was being asking to fill the position.

33. Vijay Dewar promised Ms. Teegarden that she would not have to work with Nevin Dewar because of the way he treated her during her previous employment.

34. Ms. Teegarden accepted the position as a manager for a two-month period at the Prospect Studios property.

35. After the manager was back from vacation, Ms. Teegarden continued her employment with Prospect Studios part-time.

36. Numerous times Ms. Teegarden requested that she be classified as an employee of GCM and not an independent contractor. Each time she was denied her request.

37. Throughout Ms. Teegarden's employment at Prospect Studios she was expected to work full-time even though she had requested to work part-time.

38. In approximately September of 2016, Vijay Dewar and Nevin Dewar offered Ms. Teegarden to work at the Villas of Murlen in Olathe, Kansas.

39. At this time, Ms. Teegarden requested to be an employee of GCM and not classified as independent contractor. Again, her request was denied.

40. Instead, Vijay Dewar and Nevin Dewar influenced Ms. Teegarden to continue to be classified as an independent contractor by offering Ms. Teegarden a company car, pay of $10.00 an hour and a $10,000 commission and reimbursement of gas and insurance for the company vehicle if she fixed up the property for sale and retained occupancy of 94% of the apartments.

41. Villas of Murlen was one of the worst properties managed by GCM as it was in very bad condition.

42. Ms. Teegarden was responsible for recruiting rehabilitation companies, cleaning up the apartments, hiring and firing employees, marketing the property and non-profit collaboration.

43. Ms. Teegarden hired rehabilitation crews to fix issues within the apartments.

44. During this time, Ms. Teegarden's directions to the crew members were constantly undermined by Vijay Dewar and Nevin Dewar.

45. The maintenance men at the properties were told that Ms. Teegarden was their boss, however, Nevin Dewar continued to tell the maintenance workers they did not have to listen to Ms. Teegarden.

46. Ms. Teegarden was constantly expected to work around the clock even though she requested to work part-time.

47. Throughout Ms. Teegarden's employment at Villas of Merlen she was called "bitch" by Nevin Dewar and yelled at by Vijay Dewar and Nevin Dewar.

48. At one point Nevin Dewar tried to choke Ms. Teegarden.

49. By approximately August 2017, Ms. Teegarden had cleaned up the apartment complex and retained 94% occupancy, only three apartments were vacant.

50. At this time, Ms. Teegarden went back to work at Prospect Studios.

51. In December 2017, a potential buyer had put down earnest money on the Villas of Merlen.

52. Ms. Teegarden was told by Vijay Dewar and Nevin Dewar that once the earnest money was paid she would receive her $10,000 commission for fixing up the property.

53. Ms. Teegarden continued to ask Vijay Dewar and Nevin Dewar for her commission payment but they never paid it.

54. Ms. Teegarden frequently sent text messages to both Vijay Dewar and Nevin Dewar requesting payment.

55. On October 12, 2017, Ms. Teegarden went on a trip with her family to Texas and was in a car accident.

56. Ms. Teegarden suffered from a significant back injury and needed to take off work for her doctor appointments.

57. When Ms. Teegarden would need to take off work she was constantly bothered by Vijay Dewar and Nevin Dewar and told to come back to work, even though Ms. Teegarden had provided her doctor's notes to them.

58. On December 17, 2017, Nevin Dewar told Ms. Teegarden that she would need to go to the Villas of Merlen for three days because it was out of control and it needed to be cleaned up before the sale.

59. On December 20, 2017, Nevin Dewar told Ms. Teegarden to complete the walk through in Building 5. Ms. Teegarden went to Building 5 and found a bag of drugs in the breezeway.

60. She took Nevin Dewar to Building 5 breezeway and showed him the drugs. Not long later, Nevin Dewar started screaming and cussing at her and called her derogatory names.

61. On December 20, 2017, Nevin Dewar called Ms. Teegarden a "fucking bitch."

62. On December 20, 2017, Nevin Dewar pushed a table into her and Ginny Williams, another employee. As a result, two of Ms. Teegarden's fingernails were broken, as well as a piece of her property.

63. On December 20, 2017 at approximately 3:00 p.m., Ms. Teegarden drove to the Park Place LLC to pick up paychecks for some of the employees of Prospect Studios. Vijay Dewar was already at Park Place LLC when Ms. Teegarden and told Ms. Teegarden she was not allowed inside until Nevin Dewar arrived.

64. When Nevin Dewar arrived at Park Place LLC, a meeting was held in the board room. David Stelting, Ginny Williams, Vijay Dewar, Nevin Dewar and Ms. Teegarden all met in the board room. Everyone sat down at the table and when Ms. Teegarden attempted to sit down Vijay Dewar told her she was not good enough to sit at the table with him and his son. He also called her a "Bipolar Schizophrenic pyscho bitch."

65. Vijay Dewar told Ms. Teegarden to go outside and wait until 6:00 p.m. to pick up the checks.

66. At 6:00 p.m. Ms. Teegarden picked up the checks and took them to Prospect Studios.

67. Ms. Teegarden continued to work for GCM hoping that she would finally be paid her $10,000 commission for the Villas of Merlin.

68. Nevin Dewar and Vijay Dewar constantly demeaned, yelled, cussed and called Ms. Teegarden derogatory names.

69. From approximately December 20, 2017 through January 25, 2017, Nevin Dewar constantly called Ms. Teegarden derogatory names such as "bitch."

70. From approximately December 20, 2017 through January 25, 2017, Vijay Dewar and Nevin Dewar constantly made comments about Ms. Teegarden's disability. Comments such as "Tanya's meds aren't working right," "you need to see a doctor because your meds aren't working," "Tanya forgot to take her medicine today, so stay away from her" were made by Vijay Dewar and Nevin Dewar to Ms. Teegarden and in front of and/or to other employees.

71. Nevin Dewar also told other employees about Ms. Teegarden's disabilities.

72. Throughout Ms. Teegarden's employment with GCM she was subjected to comments such as "stupid cracker" and "stupid white bitch" by Nevin Dewar and Vijay Dewar.

73. On January 21, 2018, Vijay Dewar emailed Ms. Teegarden and told her to "get the f out."

74. Vijay Dewar emailed this to Ms. Teegarden after she had made complaints to David Stelting and told him she was going to the EEOC to report the sexual harassment, discrimination and hostile work environment at the GCM properties.

75. Ms. Teegarden continued to work at Prospect Studios until January 25, 2018.

76. On January 25, 2018, when Ms. Teegarden arrived at work she was notified by Tyler Yaley that Vijay Dewar said that Ms. Teegarden was terminated.

77. GMC held Ms. Teegarden's final paycheck for a month after she was terminated.

**COUNT I – NATIONAL ORIGIN DISCRIMINATION AND HARASSMENT IN VIOLATION OF SECTION 1981**

78. Ms. Teegarden reasserts and re-alleges the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

79. The acts described above constitute national origin discrimination in violation of § 1981.

80. Nevin Dewar exhibited an animus towards Americans by yelling at them, cussing at them and calling them derogatory names. Mr. Nevin made derogatory comments to American Employees, including Ms. Teegarden. He unfairly scrutinized Ms. Teegarden, harassed her by calling her "white trash" or "stupid cracker."

81. A casual connection exists between Ms. Teegarden's national origin and the Defendant's decision to harass her, cuss at her, and terminate her employment.

82. Ms. Teegarden suffered great emotional upset due to the fact that he was harassed and terminated from her position at GCM based on her national origin. She was angry, upset, frequently stressed, lost sleep, and was constantly worried about how she might support herself.

83. GCM's act of harassing Ms. Teegarden and treating her different based on her national origin was intentional and was done with malice and/or a reckless indifference to the protected rights of Ms. Teegarden.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count I of her Complaint, for a finding that he has been subjected to unlawful national origin discrimination and harassment prohibited by Section 1981; for an award of back pay, including fringe benefits, bonuses, cost of living increases and other benefits; for interest; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' fees and expert fees and expenses; and for such other relief as the Court deems just and proper.

**COUNT II – DISABILITY DISCRIMINATION & HARASSMENT IN VIOLATION OF THE ADA AND ADAAA**

84. Plaintiff reasserts and re-alleges the allegations contained in paragraphs 1 through 83 as if fully set forth herein.

85. The acts described above constitute disability discrimination and harassment in violation of the ADA, and the ADAAA.

86. Ms. Teegarden has Bipolar disorder and post-traumatic stress disorder that substantially limits at least one major life activity thus rendering her disabled within the meaning of the ADA, and ADAAA.

87. Ms. Teegarden was a qualified individual under the ADA, and the ADAAA.

88. GCM made comments about Ms. Teegarden's medication and disabilities and harassed Ms. Teegarden after she notified them she could only work part time. GCM eventually terminated Ms. Teegarden based on her disability.

89. Ms. Teegarden suffered great emotional upset due to the fact she was harassed for having Bipolar disorder and post-traumatic stress disorder and terminated from her position with GCM based on her disability. She was angry, upset, frequently stressed, lost sleep, and was constantly worried about how she would support herself.

90. GCM's harassment of Ms. Teegarden because of her disorders and terminating her employment because of her disorders was intentional and was done with malice and/or a reckless indifference to the protected rights of Ms. Teegarden.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count II of her Complaint, for a finding that she has been subjected to unlawful disability discrimination and harassment prohibited by the ADA and ADAAA; for an award of back pay and other benefits; for an award of front pay; for interest; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorney's fees and costs and expenses, and for such other relief the Court deems just and proper.

**COUNT III – RETALIATION IN VIOLATION OF THE ADA AND ADAAA**

91. Plaintiff reasserts and re-alleges the allegations contained in paragraphs 1 through 90 as if fully set forth herein.

92. The acts described above constitute disability discrimination and harassment in violation of the ADA, and the ADAAA.

93. Ms. Teegarden disclosed to GCM that she had Bipolar disorder and post-traumatic stress disorder and would need to work part-time.

94. However, after disclosing Ms. Teegarden's disability, she was harassed by Nevin Dewar and Vijay Dewar for needing medication for her disability and was ultimately terminated based on her disorder.

95. There is a causal connection between Ms. Teegarden's protected activity of requesting a reasonable accommodation in the form of working part time and the harassment and discharge which followed.

96. Ms. Teegarden suffered great emotional upset due to the fact she was harassed. She was angry, upset, frequently stressed, lost sleep and was constantly worried about how to support herself.

97. GCM's harassment of Ms. Teegarden because of her disorder and terminating her employment because of her disorder was intentional and was done with malice and/or a reckless indifference to the protected rights of Ms. Teegarden.

WHEREFORE, Plaintiff prays for judgment against Defendants on Count III of her Complaint, for a finding that she has been subjected to unlawful retaliation prohibited by the ADA and ADAAA; for an award of back pay and other benefits; for an award of front pay; for interest; for an award of compensatory and punitive damages; for her costs expended; for her reasonable attorney's fees and costs and expenses, and for such other relief the Court deems just and proper.

**COUNT IV – ASSAULT AND BATTERY**
**AGAINST GCM AND NEVIN DEWAR**

98. Plaintiff reasserts and re-alleges the allegations contained in paragraphs 1 through 97 as if fully set forth herein.

99. The acts described above amount to an assault and battery in violation of the Missouri common law.

100. Ms. Teegarden was subjected to an unwelcome, harmful and offensive contact when Nevin Dewar pushed a table into her, breaking two of her nails.

101. Nevin Dewar intended to bring about a harmful and offensive contact that was not consented to by Ms. Teegarden.

102. As a result of the harmful and offensive contact, Ms. Teegarden suffered shock, emotional upset, disgrace, fear and a loss of self-esteem.

103. Nevin Dewar's actions of pushing the table in to Ms. Teegarden was willful, wanton, and reckless for which punitive damages are appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendants GCM and Nevin Dewar on Count IV of her Complaint, for a finding that she has been subjected to an unlawful assault and battery prohibited by Missouri law; for an award of compensatory and punitive damages, for interest; and for such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby requests a trial by jury on all issues triable by jury.

**WILLIAMS DIRKS DAMERON LLC**

/s/ Michael A. Williams
Michael A. Williams, MO Bar No. 47538
1100 Main Street, Suite 2600
Kansas City, MO 64105

mwilliams@williamsdirks.com
(o) 816-945-7110
(f) 816-945-7118

***Counsel for Ms. Teegarden***

**CERTIFICATE OF SERVICE**

I hereby certify that on June 6, 2019, a copy of the foregoing was filed using the Court's ECF system which will provide electronic service to counsel of record.

/s/ Michael A. Williams
Michael A. Williams