UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| TANYA M. TEEGARDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:18-CV-00554-SRB |
| v. | ) |
| | ) |
| GOLD CROWN MANAGEMENT, LLC and | ) |
| NEVIN DEWAR, | ) |
| | ) |
| Defendants. | ) |

**ANSWER DEFENDANT**
**GOLD CROWN MANAGEMENT, LLC**

COMES NOW Defendant Gold Crown Management, LLC ("GCM") and submits herewith its Answer to Plaintiff's Second Amended Complaint.

**PARTIES**

1. Defendant does not know the truth of the allegations in ¶1 and therefore does not admit but requires proof thereof by plaintiff.

2. Denied.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted as to GCM. Denied as to Dewar.

7. Denied.

8. All allegations except that Dewar resides in the State of Kansas and is a part owner of GCM are denied. Nevin Dewar is an American citizen, born in the United States who has

resided in the United States the entirety of his life. Nevin Dewar's country of origin is the United States of America.

9. All allegations denied except that Vijay Dewar is part owner of GCM and that Vijay Dewar's country of origin is India.

## **JURISDICTION AND VENUE**

10. Objection: The allegations of ¶10 are legal conclusions and not a short plain statement of fact. Having objected, Defendants admit that this Court has jurisdiction to adjudicate P's claims against GCM only.

11. Denied.

12. Admitted.

13. Admitted.

14. Admitted.

15. Denied.

## **GENERAL ALLEGATIONS**

16. Denied.

17. Denied.

18. Denied.

19. Admitted.

20. Denied.

21. Denied.

22. Denied, except for the allegation that Ms. Teegarden claims the car she had been provided caught fire. All other allegations of ¶22 are denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Responding to ¶27, Defendant does not know the truth of the allegation and therefore requires Plaintiff to present strict proof thereof.

28. Denied.

29. Denied.

30. Denied with the exception that Ms. Teegarden's work at Park, LLC ended in 2015.

31. The allegations of ¶31 are denied except for Ms. Teegarden's acknowledgment that in or about April 2016 she started working as a manager at Prospect Studios as an independent contractor at an hourly rate of $10 per hour under the agreement that Ms. Teegarden would document her hours worked using the timecard system that had been established by GCM.

32. Denied.

33. The allegations of ¶33 are denied, including the unfounded and unsupported allegation that Ms. Teegarden had previously been "employed" by GCM and/or that Nevin Dewar had treated Ms. Teegarden badly any time previously.

34. Denied that Ms. Teegarden accepted a position at Prospect Studios for a limited period of time.

35. Denied.

36. Denied.

37. Denied.

38.     Denied as stated.  Ms. Teegarden was told that her services as property manager at Villas of MurLen could be helpful and Ms. Teegarden volunteered to begin working primarily at Villas of MurLen.

39.     Denied.

40.     Denied with the exception that Ms. Teegarden was provided use of a car because she lived in Gladstone and the MurLen property is in Olathe, Kansas.  All other allegations of ¶40 are denied.

41.     Denied.

42.     Denied.

43.     Denied.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied as stated.  Defendant admits that Ms. Teegarden worked primarily at the Prospect Studios after working primarily at Villas of MurLen for some months.

51.     Denied as stated.

52.     Denied.

53.     Deny that Plaintiff was entitled to a "commission payment" with regard to work at Villas of MurLen related to the sale of that property or occupancy rate.  Admit that Plaintiff demanded a supposed "commission" to which she was not entitled.

54. Denied as stated but admit that before Ms. Teegarden filed her EEO Complaint and before Defendants had any knowledge that Ms. Teegarden had filed an EEO Complaint or was participating in any EEO Complaint, Ms. Teegarden demanded payment of a commission to which she was not entitled.

55. Responding to ¶55, Defendants do not know the truth of the allegations and therefore require Plaintiff to present strict proof thereof.

56. Responding to ¶56, Defendants do not have sufficient knowledge to know the truth of the allegations of ¶56 and therefore require Plaintiff to present strict proof thereof. Further responding, Defendants deny that Ms. Teegarden informed Defendants that she needed time off work for doctor appointments related to a back injury and/or any "disability" Ms. Teegarden has alleged in her EEO Complaint or in this lawsuit.

57. Denied.

58. Denied.

59. Defendants are without sufficient knowledge to know the truth of the allegations in ¶59 and therefore require strict proof thereof by Plaintiff.

60. Denied as stated. Defendant Dewar admits that Plaintiff defamed Mr. Dewar by telling one or more employees of Park, LLC that the drugs she supposedly found belonged to Mr. Dewar or had been left on the premises by Mr. Dewar.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Responding to ¶67, Defendants do not know and will not speculate as to what Plaintiff "hoped" but deny that she "continued to work for GCM" and that she was entitled to any commission with regard to work at Villas of MurLen.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Admit that Vijay Dewar informed Ms. Teegarden in January 2018 that she had no right to be on the premises of the property owned by Gladstone 180, LLC (Prospect Studios) after Ms. Teegarden had chosen in late December 2017 or early January 2018 to stop working as manager at Prospect Studios and had informed Defendant that she would not comply with the time reporting and time card policy. In a message in January 2018, Vijay Dewar made the statement recited in ¶73 out of frustration because of Ms. Teegarden's continuing trespass and interference with business at Prospect Studios and because she had failed and refused to stay off the premises despite the fact that her business relationship with Gladstone 180, LLC had ended prior to the date of the message.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

## RESPONSE TO COUNT I

78. Defendants incorporate their responses and objection to each of ¶¶1-77.

79. Denied.

80. Denied. Nevin Dewar's country of origin is the United States of America.

81. Denied that any of the harassment, cussing and/or "job termination" alleged by Plaintiff, all of which has previously been denied, had any relationship to Ms. Teegarden's national origin or race.

82. Denied.

83. Denied.

## RESPONSE TO COUNT II

84. Defendants incorporate their responses and objections to ¶¶1-83.

85. Denied.

86. Admit that Ms. Teegarden has claimed that she has been diagnosed with bi-polar disorder but deny that any such bi-polar disorder, even if proven by Plaintiff, substantially limited any of Plaintiff's major life activities during the period of time she had a business relationship with Gladstone 180, LLC, Torries, LLC (the owner of Villas of MurLen) and/or GCM. Defendants further deny that Ms. Teegarden disclosed any disability, including without limitation, bi-polar disorder and/or post-traumatic stress disorder when she began working at Gladstone 180, LLC in April 2016 or at any time thereafter until disclosing such alleged condition in her EEO Complaint of which Defendants did not have notice until months after Ms. Teegarden made her EEO Complaint. Further answering, Defendants deny that Ms. Teegarden requested any accommodation with regard to any disability she has alleged in this case or that she alleged in her EEO charge. Defendants further deny that Plaintiff was denied any request for time off or any

other accommodation that was reasonably necessary for the performance of the work that was requested by Defendants and agreed to by Ms. Teegarden.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

## RESPONSE TO COUNT III

91. Defendants incorporate by reference herein each of their responses and objections to ¶¶1-90.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

## RESPONSE TO COUNT IV

98. Defendants incorporate by reference herein each of their responses and objections to ¶¶1-97.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Unless expressly admitted herein, Defendants jointly and individually deny each and every allegation of ¶¶1-103 of the Second Amended Complaint.

**DEFENDANTS' JOINT AND INDIVIDUAL AFFIRMATIVE DEFENSES**

1. First Affirmative Defense: This Court has previously entered its Order determining that Vijay Dewar and Nevin Dewar as "owners" of any business entity that may have been Plaintiff's "employer" or owner of any real property where Plaintiff alleges she performed services as an "employee" have no individual liability deriving from their status as the two owners of GCM. Nevin Dewar did not employ Plaintiff at any time and, therefore, Nevin Dewar is an "employer" under Title VII or under 42 U.S.C. §1981 or under the ADA and the ADAAA.

2. Second Affirmative Defense: Defendant Nevin Dewar was not Plaintiff's supervisor with regard to any of the Plaintiff's allegations of discrimination, harassment or retaliation alleged in the Second Amended Complaint.

3. Third Affirmative Defense: Plaintiff's allegations of disability discrimination and/or retaliation in the Second Amended Complaint are not alleged in and/or go beyond Plaintiff's charge of discrimination that is identified in Plaintiff's Second Amended Complaint and, therefore, Plaintiff does not have any right to proceed under or recover damages in this case from either Defendant on the claims of retaliation in Counts II (disability discrimination) and/or Count III (retaliation and violation of the ADA and the ADAAA).

4. Fourth Affirmative Defense: Prior to the time Defendants GCM and Nevin Dewar had any knowledge or notice of Plaintiff's Charge of Discrimination alleged in this case, which Plaintiff did not file until April 16, 2018, and of which GCM was not notified until late April or early May 2018, Plaintiff's alleged employment by GCM had ended either by Plaintiff quitting or by Plaintiff being fired in late December 2017 or early January 2018. Plaintiff has not alleged and

cannot prove that any action taken by GCM or Dewar that Plaintiff claims was discriminatory resulted from or out of knowledge by GCM or Nevin Dewar that Plaintiff was participating in a Charge of Discrimination being pursued by herself or that had been initiated by a third party.

5. Fifth Affirmative Defense: Plaintiff has not alleged and neither GCM nor Nevin Dewar had knowledge or notice of opposition by Plaintiff to any allegedly discriminatory act or omission by GCM or any employee of GCM until GCM first became aware in late April of early May 2018 that Plaintiff had filed a Charge of Discrimination against GCM on April 18, 2018. The Charge of Discrimination which is attached as Exhibit A to Plaintiff's Second Amended Complaint makes no allegation whatsoever of any harassing or discriminatory conduct by any employee, officer or member of GCM as alleged in ¶74 of Plaintiff's Second Amended Complaint at any time while Plaintiff was still allegedly employed by GCM, which alleged employment, according to Plaintiff's allegations ended on or about January 25, 2018.

6. Sixth Affirmative Defense: During the period of alleged employment during which Plaintiff has alleged she was discriminated against because of her disability, approximately April 2016 up to approximately January 25, 2018, neither Defendant had knowledge of any medical, physical or emotional condition of Plaintiff that substantially limited at least one major life activity of Plaintiff or which constituted a "disability" within the meaning of the ADA and the ADAAA. Further, Plaintiff did not seek or request accommodation for any condition that would constitute a "disability." Further, to the extent that Plaintiff requested time off work because of any physical or emotional condition or requested accommodation to assist or enable her to perform her job duties, Defendant provided such accommodation and Plaintiff never informed Defendants that any such accommodation was not reasonably sufficient to enable her to perform her job duties.

7. Seven Affirmative Defense: Neither Defendant engaged in words or actions or permitted employees of GCM under their supervision to engage in words or actions that were both subjectively offensive to Plaintiff and were objectively offensive to a reasonable person under the then and there existing facts and circumstances and none of the words or actions by Vijay Dewar, Nevin Dewar or independent contractor, Stelting, that Plaintiff has alleged were so repeated, recurring or of long-standing duration such as to create a hostile environment adversely affecting terms and conditions of Plaintiff's alleged employment by GCM.

8. Eighth Affirmative Defense: Plaintiff's allegation of entitlement to a "commission" for her work that increased the value of real property known as Villas of MurLen is barred by the applicable Kansas statute of frauds in that the claim of entitlement to commission was an oral "promise" and not reduced to writing.

9. Ninth Affirmative Defense: Plaintiff's claim in Count I to entitlement of payment of a "commission" fails because neither GCM nor Nevin Dewar owned Villas of MurLen or had any right or obligation to make payment to Plaintiff under the "contract for commission" Plaintiff has alleged.

10. Tenth Affirmative Defense: Plaintiff has failed to allege any factual basis sufficient to establish a prima facie case or sufficient to establish entitlement to judgment on a claim that any act or omission by GCM or Nevin Dewar in failing to pay a supposed commission to which Plaintiff claims she was entitled was in any way causally related to Plaintiff's race, sex or country of national origin.

11. Eleventh Affirmative Defense: Plaintiff's claim of battery against GCM and Nevin Dewar is barred by the one-year Kansas statute of limitations applicable to a battery claim, which applies because Plaintiff has alleged that the claimed battery took place in the State of Kansas at

the Villas of MurLen located in Olathe, Johnson County, Kansas in 2017. The claim of battery was not asserted in the original Complaint or the First Amended Complaint.

12. Twelfth Affirmative Defense: Plaintiff's claims for punitive damages are unwarranted and unjustified in that Plaintiff has failed to allege and cannot prove that either Defendant engaged in willfully wrongful or malicious conduct with regard to Plaintiff.

WHEREFORE, having fully answered Plaintiff's allegations in Counts I through IV of the Second Amended Complaint, Defendants pray for judgment against Plaintiff and for the assessment of all costs, expenses and reasonable attorney's fees against Plaintiff and for any other relief deemed appropriate by the Court.

## **COUNTERCLAIM OF NEVIN DEWAR**
### **COUNT I**

COMES NOW individual Defendant Nevin Dewar, and for his counterclaim against Plaintiff, alleges and states as follows:

1. Plaintiff, Tanya Teegarden, has alleged in her Second Amended Complaint that she is a resident of Kansas City, Jackson County, Missouri.

2. Nevin Dewar is a resident of Leawood, Johnson County, Kansas.

3. On May 4, 2018, Teegarden filed a Petition for Protection from Stalking or Sexual Assault against Nevin Dewar in the District Court of Johnson County, Kansas in Case No. 18CV2487, Division M2.

4. In the Petition, Plaintiff made allegations of fact claiming that, amongst other things, that Nevin Dewar had:

    (a) Attacked her by knocking a plate from her hand and causing her to break a fingernail; and

(b) Nevin Dewar had damaged or tampered with the wheels on her automobile causing one or more of the wheels to come off the automobile thereby endangering her; and

(c) Nevin Dewar had "raised his hand like he was going to choke me."

5. None of the above allegations that Plaintiff made against Nevin Dewar were true and none of the allegations had any legitimate factual basis whatsoever.

6. Ms. Teegarden's allegations as set out above were presented to the Honorable Robert Scott of the Johnson County District Court on July 2, 2018.

7. On July 2, 2018, Judge Scott, after hearing Plaintiff's evidence, granted Mr. Nevin Dewar's Motion to dismiss the Petition against Mr. Dewar and entered the Court's Order doing so.

8. Teegarden did not appeal from the Judge's Order dismissing her Petition on or about July 2, 2018.

9. Plaintiff initiated the Petition seeking an Order of Protection without probable cause in that she knew or reasonably should have known that the allegations of threat or threatened injury were not true, were contrived and were pretextual.

10. Plaintiff initiated the Petition with the malicious purpose and intent of retaliating against Nevin Dewar for Plaintiff's mistaken and entirely unfounded belief that Mr. Nevin Dewar had terminated her ostensible employment by a company with whom Nevin Dewar was affiliated and for which Plaintiff had worked as a property manager.

11. Plaintiff's allegations that were both lacking in probable cause and malicious terminated in favor of Nevin Dewar with the judgment entered by Judge Scott dismissing Plaintiff's Petition.

12. As a result of Plaintiff's malicious initiation of the Petition for Protective Order with malice as set out before, Nevin Dewar was required to incur attorney's fees in successfully defending against and defeating Plaintiff's Petition.

WHEREFORE, Nevin Dewar prays for judgment under Count I of this Counterclaim for damages in the amount of all attorney's fees Nevin Dewar incurred in successfully defeating Plaintiff's maliciously brought Petition for Protective Order and for all costs and expenses of the action and for any other relief deemed appropriate by the Court.

## COUNT II
**Abuse of Process**

13. For Count II of this Counterclaim, Nevin Dewar incorporates by reference herein and makes a part hereof each and every allegation of Count I.

14. In having Summons issued for service of Plaintiff's Petition seeking Protective Order filed in the Johnson County District Court, Plaintiff used legal process in order to prosecute the Petition for Protective Order identified hereinbefore.

15. Plaintiff served process, that is, the Summons and Petition, with the ulterior motive and improper purpose of attempting to establish or support the Charge of Discrimination Plaintiff had filed with the EEOC on April 18, 2018 alleging, among other things, violation of Plaintiff's rights under Title VII and/or other discriminatory conduct.

16. As a direct and proximate result of Teegarden's misuse of legal process, including without limitation, service of Summons and Petition seeking Protective Order against Nevin Dewar as alleged above, Nevin Dewar was caused and compelled to incur attorney's fees in response to the Petition.

17. Plaintiff's abuse of process as set out above was willfully wrongful, unjustified, motivated by an evil purpose and/or intended to cause injury and harm to Nevin Dewar, thereby,

entitling Nevin Dewar to recover exemplary damages against Plaintiff in addition to any actual damaged awarded hereunder.

18. Plaintiff's Petition for Protective Order was dismissed on July 2.

WHEREFORE, Nevin Dewar prays for judgment against Plaintiff under Count II of this Counterclaim for actual damages incurred as well as all costs and expenses of the action and for exemplary damages in an amount that is fair, just and reasonable under the facts and circumstances and for any other relief deemed appropriate by the Court.

Respectfully submitted,

WYRSCH HOBBS MIRAKIAN, P.C.

By: /s/ Stephen G. Mirakian
Stephen G. Mirakian  MO #29998
1200 Main Street, Suite 2110
Kansas City, MO 64105
816-221-0080
Fax: 816-221-3280
smirakian@whmlaw.net
ATTORNEYS FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of July, 2019, a true and correct copy of the above referenced document was electronically filed with the court using ECF Filing and a copy emailed to the following:

Michael A. Williams (KS #19124)
Williams Dirks Dameron LLC
nwilliams@williamsdirks.com
Attorney for Plaintiff

/s/ Stephen G. Mirakian
Attorney for Defendant