# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| TANYA M. TEEGARDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00554-SRB |
| | ) | |
| GOLD CROWN MGMT., LLC, and | ) | |
| NEVIN DEWAR, | ) | |
| | ) | |
| Defendants. | | |

## ORDER

Before the Court is Defendant Gold Crown Management, LLC's and Defendant Nevin Dewar's Motion for Summary Judgment (Doc. #125) and Motion to Strike (Doc. #151).  For the reasons stated below, Defendants' Motion for Summary Judgment is granted in part and denied in part, and Defendants' Motion to Strike is denied.

## I.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires a court to grant a motion for summary judgment if 1) the moving party "shows that there is no genuine dispute of material fact" and 2) the moving party is "entitled to judgment as a matter of law."  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When determining whether a motion for summary judgment should be granted, a court "must consider the evidence in the light most favorable to the nonmoving party and give him the benefit of all reasonable inferences in the record."  *Morris v. City of Chillicothe*, 512 F.3d 1013, 1018 (8th Cir. 2008).  A court "does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual

issue." *Jenkins v. Winter*, 540 F.3d 742, 750 (8th Cir. 2008); *see also United States v. Fattmann*, 905 F. Supp. 646, 648 (W.D. Mo. 1995) ("In ruling on a motion for summary judgment, the Court does not decide material fact issues, rather it determines whether or not they exist.").

## II. BACKGROUND

Plaintiff Tanya Teegarden ("Teegarden") filed suit against her former employer, Gold Crown Management, LLC ("GCM"), for its alleged violations of 42 U.S.C. § 1981 ("§ 1981") and the Americans with Disabilities Act ("ADA"). Teegarden also raises an assault and battery claim against Nevin Dewar individually. GCM is a rental-management company that manages apartment complexes located in the Kansas City metropolitan area. Vijay Dewar and his son, Nevin Dewar, are the sole members of GCM. Considering the factual positions of the parties in the light most favorable to the nonmoving party, the Court finds the relevant facts are as follows.

In August of 2015, Teegarden applied for a part-time job as a weekend leasing agent at Prospect Studios, an apartment complex owned and managed by Gladstone 180, LLC, a limited liability company of which Vijay and Nevin Dewar were the sole members.[1] Teegarden is disabled; she suffers from bipolar disorder as well as post-traumatic stress disorder ("PTSD"), conditions which limit her ability to maintain full-time employment. Teegarden disclosed her disability and her preference for part-time employment during her interview with Debbie Kendrick, who at the time served as the then-property manager of Prospect Studios. After she interviewed Teegarden, Kendrick disclosed to Vijay Dewar Teegarden's disability and her desire to work part-time. Teegarden was soon hired and began working at Prospect Studios part-time.

---

[1] Prior to 2016, Vijay and Nevin Dewar served as the sole members of the following limited liability companies, which each managed a given apartment complex: (1) Park Apartments (also known as "Metcalf 79") in Overland Park, Kansas, was owned and managed by Park, LLC; (2) Torries Chase Apartments (also known as "Mur-Len Villas") in Olathe, Kansas, was owned and managed by Torries, LLC; (3) Prospect Studios in Gladstone, Missouri, was owned and managed by Gladstone 180, LLC; and (4) Mission Road Studios, located in Kansas City, Kansas, was owned and managed by Mission 200, LLC. (Doc. #125, ¶5).

2

Several weeks after starting work at Prospect Studios, Vijay Dewar transferred Teegarden to a different apartment complex. Teegarden's workload soon increased to forty hours per week, and she continued to work on a full-time basis until Nevin Dewar fired her in January 2016. In April 2016, Vijay Dewar contacted Teegarden and offered to hire her back as a part-time leasing agent at Gold Crown Management, LLC ("GCM"), which oversaw the business operations for each apartment complex owned by the Dewars.[2] Teegarden agreed, resuming her part-time job as a leasing agent at Prospect Studios. Over time, her job again morphed into a full-time position with various responsibilities at multiple GCM properties. In 2016, Teegarden began managing the Mur-Len Villas apartment complex, where she continued to serve as a property manager and leasing agent until her employment with GCM officially ended in January 2018.

While the series of events that took place over the course of Teegarden's employment are disputed, the parties agree Teegarden and the Dewars had a tumultuous employment relationship. Teegarden either quit or was fired by Vijay and/or Nevin Dewar on multiple occasions, but each time she would ultimately return to GCM and resume her role. In her deposition, Teegarden testified that Vijay and Nevin Dewar would verbally criticize, yell at, and belittle her on a near-daily basis. She testified that Vijay and Nevin Dewar would call her "schizophrenic," "stupid," "crazy," "bipolar," and a "stupid bitch," and that such insults were sometimes made in front of other employees. (Doc. #145, p. 32). Teegarden also testified that Vijay and/or Nevin Dewar would tell other GCM employees about her disability and instruct them to not speak to or work with her because "she's not on her meds today" or her "meds must not be working today." (Doc. #145, p. 33). Teegarden also testified to several incidents of physical abuse by Nevin Dewar,

---

[2] In January 2016, GCM was re-registered as an LLC in Kansas, and the Dewars consolidated the business operations for each of the LLCs that managed a given apartment complex under GCM. As a result of the consolidation, GCM absorbed each of the employees from those various LLCs and began managing all of the employment, personnel, payroll, and business-administration matters for each rental property.

3

though these incidents are disputed. In one instance, Nevin Dewar allegedly raised his hands as if he were going to choke Teegarden. Teegarden further testified that on December 20, 2017, Nevin Dewar cursed at her and angrily shoved a table at her, breaking two of Teegarden's fingernails and causing her to drop a plate she was holding, which fell and subsequently broke. Later that same day, Teegarden attended a GCM staff meeting where Vijay Dewar and Nevin Dewar were present. Teegarden testified that when she attempted to sit down and join the meeting, Vijay Dewar called her a "bipolar schizophrenic psycho bitch" and told her she was "not good enough to sit at a table with him and his son." (Doc. #145-11, p. 32).

The record is unclear regarding when Teegarden's employment at GCM officially ended and the circumstances under which it ended. At some point after the incident on December 20, 2017, Teegarden indicated her interest in working part-time to David Stelting, a GCM employee and supervisor. Stelting authored a letter promising Teegarden a part-time weekend position at GCM slated to begin on January 6, 2018, though Defendants argue Stelting lacked the authority to make such an offer. Teegarden testified that upon reporting to work in a part-time capacity, she was informed that Vijay Dewar had told other employees that Teegarden no longer worked at GCM. The parties dispute whether Teegarden quit shortly thereafter and GCM declined to rehire her, or if Vijay Dewar fired Teegarden on January 21, 2018, via a text message telling her to "Get the fuck out." (Doc. #145, p. 37). In any event, GCM refused to rehire Teegarden on February 13, 2018, issuing her a letter stating that "due to income restrictions, GCM will not be able to extend an offer of employment to Tanya Teegarden at this time." (Doc. #145-15, p. 1).

Teegarden filed a claim with the Equal Opportunity Employment Commission ("EEOC") in April 2018, alleging numerous forms of discrimination by GCM between April 1, 2016, and January 24, 2018. At one point, Teegarden also filed a Kansas state-court petition against Nevin

4

Dewar seeking a civil order of protection from stalking, which was ultimately denied following an evidentiary hearing. On May 15, 2018, the EEOC issued Teegarden a right-to-sue letter and Teegarden filed her suit in federal court *pro se* on July 23, 2018. Teegarden proceeded to litigate her case *pro se* for nearly a year until securing counsel on or around May 13, 2019. Teegarden, represented by counsel, subsequently filed a second amended complaint in which she seeks relief for: (1) Count I: National Origin Discrimination and Harassment in Violation of § 1981; (2) Count II: Disability Discrimination and Harassment in Violation of the ADA and ADAAA; (3) Count III: Retaliation in Violation of the ADA and ADAAA; (4): Count IV: Assault and Battery Against GCM and Nevin Dewar. (Doc. #85).

## III. DISCUSSION

Defendants jointly move for summary judgment on all Counts. After Teegarden filed her response to Defendants' motion for summary judgment, Defendants filed a motion to strike three supporting declarations and/or affidavits submitted by Teegarden with her summary judgment opposition. Each motion is addressed in turn below.

### A. Motion to Strike or Disregard Declarations Submitted by Teegarden

Pursuant to Rule 56(e), Defendants move to strike or disregard the declarations and affidavits of Debbie Kendrick, Charles Dudding, and Sue Freeman (the "Affidavits"), submitted by Teegarden in support of her opposition to summary judgment. Defendants argue that the Affidavits are "sham affidavits" and should be wholly barred from consideration. Alternatively, Defendants move to strike from each affidavit specific paragraphs that purportedly contain either irrelevant, inadmissible, or inflammatory evidence. Teegarden disagrees, arguing the Affidavits were made by a competent affiant based on his or her personal knowledge and contain evidence that would be admissible at trial.

"District courts enjoy considerable discretion when ruling on a motion to strike affidavits submitted in support of or opposition to a summary judgment motion." *Zorich v. St. Louis Cty.*, No. 4:17-CV-1522 PLC, 2018 WL 6621525, at \*5–7 (E.D. Mo. Dec. 18, 2018) (citing *Jain v. CVS Pharmacy, Inc.*, 779 F.3d 753, 758 (8th Cir. 2015)). Any affidavit or declaration used to oppose a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the [declarant] is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A statement in an affidavit or declaration that does not satisfy this requirement may be stricken or disregarded. *Jain*, 779 F.3d at 758 (citation omitted).

### 1. Sham Affidavits

As a preliminary issue, Defendants urge the Court to strike the disputed Affidavits because they are "sham affidavits" designed to manufacture material factual disputes. A "sham affidavit" contains statements that contradict a party's prior sworn testimony, drafted solely for the purpose of defeating summary judgment. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498 (8th Cir. 2008) (citing *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365–66 (8th Cir. 1983)) ("A party should not be allowed to create issues of credibility by contradicting his own earlier testimony [by filing a contradictory affidavit.]"). Sham affidavits should be disregarded unless "the prior testimony reflects confusion on the part of the witness and the affidavits explain why the earlier testimony is in conflict with the affidavits." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 402 (8th Cir. 1995). However, if "the affiant's affidavit does not actually contradict his earlier testimony, the district court should not strike the affidavit from the record." *City of St. Joseph v. Sw. Bell Tel.*, 439 F.3d 468, 476 (8th Cir. 2006) (citing *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999)).

The Court finds the "sham affidavit" doctrine inapplicable in this case. For an affidavit to be stricken under this doctrine, a party's prior testimony must be contradicted by a subsequent

6

affidavit from the same party.  *See K.R.S. v. Bedford Cmty. Sch. Dist.*, 109 F.Supp.3d 1060, 1073 (S.D. Iowa 2015) (citing *City of St. Joseph*, 439 F.3d at 476) ("There are two requirements for the doctrine to apply: the testimony by a party (or witness) must have been previously committed to deposition and *the same* party (or witness) must attempt to contradict that testimony by subsequent affidavit.") (emphasis in original).  Defendants do not identify prior sworn testimony by either Kendrick, Dudding, or Freeman that is now contradicted by their subsequent affidavits.  In their reply brief Defendants claim, without supporting legal authority, that Teegarden cannot contradict her own sworn testimony by submitting a third-party affidavit containing inconsistent, contradictory statements.  This argument fails and the Court finds the "sham affidavit" doctrine inapplicable.

### 2.  Debbie Kendrick Declaration (Doc. #145-3)

Defendants argue Kendrick's declaration should be wholly stricken because it includes inadmissible hearsay, speculation, conjecture, and statements of opinion.  Alternatively, Defendants request that Paragraphs 23–24, 30–36, and 41–49 be stricken because they contain irrelevant, immaterial, false, or inflammatory allegations.[3]  Defendants also argue Paragraphs 23–24 contain inadmissible hearsay.[4]  Teegarden counters each of Defendants' arguments on a paragraph-by-paragraph basis, explaining why each disputed statement is both relevant and

---

[3] Defendants also object to Paragraphs 7, 9, 11–13, 16–21, and 27–29 of Kendrick's declaration to the extent those statements relate to either the number of employees employed by GCM or the interrelationship between GCM and the various LLCs owned by the Dewars.  (Doc. #151, pp. 1–2).  However, as discussed *infra* Section II(B)(2)(a), Defendants concede that GCM satisfied the ADA's employee numerosity requirement in 2016. Given that concession, the Court need not consider Kendrick's statements in those above-enumerated paragraphs in resolving Defendants' motion for summary judgment.

[4] Defendants also object to Paragraphs 39–40 of Kendrick's declaration as being irrelevant and immaterial, while Teegarden contends these statements are relevant because they demonstrate Vijay and Nevin Dewar exhibited animus toward American workers.  However, as discussed *infra* Section II(B)(1), a national-origin discrimination claim is not actionable under 42 U.S.C. § 1981(b).  Accordingly, the Court need not consider Kendrick's statements in Paragraphs 39–40 in resolving Defendants' motion for summary judgment.

7

admissible. Having reviewed each of the challenged statements, the Court finds Kendrick's declaration admissible and declines to strike it, either in whole or part, from the record.

### a. Paragraphs 23–24

In her declaration, Kendrick alleges that Teegarden told Kendrick during her initial job interview in 2015 that she was disabled and could only work part-time, which Kendrick later disclosed to Vijay Dewar. Defendants argue these statements are irrelevant, immaterial, and inadmissible hearsay. The Court disagrees. The statements are relevant to the issue of whether Vijay Dewar knew of Teegarden's disability and whether she ever indicated a need for part-time accommodation. *See* Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action"). Further, Kendrick's disclosure of Teegarden's disability to Vijay Dewar may be admissible as a non-hearsay statement made by an employee during the course and scope of employment. *See* Fed. R. Evid. 801(d)(2); *see also Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1078 (8th Cir. 2005). The Court declines to strike Paragraphs 23–24.

### b. Paragraphs 30–36

In her declaration, Kendrick alleges that she frequently observed Vijay and Nevin Dewar make derogatory comments about Teegarden's mental health to her, to other employees, and to Teegarden directly. Kendrick also alleges that she observed Vijay and Nevin Dewar criticize, belittle, curse, and yell at Teegarden over the course of her employment. Defendants argue these allegations should be stricken since they are irrelevant, immaterial, and contradict Teegarden's own testimony. The Court disagrees. These statements are relevant to Teegarden's hostile work environment claim and refer to conduct that occurred during the operative window of time.[5] The

---

[5] *See infra* Section II(B)(2)(a), identifying the relevant period of time for Teegarden's hostile work environment claim, considered a continuing violation under Eighth Circuit law. *See Moses v. Dassault*

8

issue of whether Kendrick's statements are to be believed or contradict Teegarden's testimony is a question of credibility. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge."). The Court declines to strike Paragraphs 30–36.

### c. Paragraphs 41–49

In her declaration, Kendrick alleges she also suffered harassment from Vijay and Nevin Dewar and that, on several occasions, she was promised financial bonuses by Vijay Dewar that were never paid. Defendants argue these allegations of harassment are inadmissible because she has not pursued her own claims of discrimination or retaliation and that any possible relevance is outweighed by their prejudicial impact. Defendants also argue any alleged promises of financial bonuses are irrelevant to Teegarden's claims. The Court disagrees. Regardless of whether or not Kendrick has elected to pursue her own discrimination action, these allegations are relevant to Teegarden's hostile-work-environment claim and are offered to raise credibility questions about Vijay and Nevin Dewar's testimony, which is an issue for a factfinder. The Court thus declines to strike Paragraphs 41–49.

### d. Personal Knowledge

In their reply brief, Defendants insist that Kendrick lacks any personal knowledge of Teegarden's work environment during the time period she was employed by GCM. Specifically, Defendants argue that Kendrick was not in a position to make "personal observations" about any harassment or lack of accommodation that Teegarden allegedly endured. (Doc. #153, p. 8). The Court disagrees. Kendrick was the individual who initially interviewed Teegarden when her employment relationship with Vijay and Nevin Dewar began. She is thus in a position to testify

---

*Falcon Jet-Wilmington Corp.*, 894 F.3d 911, 920 (8th Cir. 2018) (noting hostile environment claims involve repeated incidents of conduct that together constitute "one unlawful employment practice").

about the information Teegarden disclosed during that interview, as well as any information from that interview that Kendrick later communicated to Vijay Dewar. Further, Kendrick may testify regarding any statements or conversations she personally observed and/or participated in while she was employed at GCM, and she may draw lay conclusions regarding the character or nature of those interactions. *See, e.g.*, *Glob. Petromarine v. G.T. Sales & Mfg., Inc.*, No. 06-1089-CV-W-FJG, 2010 WL 3269724, at *3 (W.D. Mo. Aug. 16, 2010). The Court finds Kendrick has the requisite personal knowledge to testify on the disputed matters in her affidavit.

### 3. Charles Dudding Declaration (Doc. #145-12)

Defendants move to wholly strike the declaration of Charles Dudding, a former GCM employee hired in December 2018. Defendants argue Dudding lacks personal knowledge of any conduct or employment practice that occurred prior to him being hired and contend that each paragraph in Dudding's declaration is either irrelevant, immaterial, or inflammatory. Teegarden argues that Dudding's declaration is relevant to the issue of GCM's employee numerosity and whether Vijay and/or Nevin Dewar used "vulgar language" in the workplace, which relates to her § 1981 claim.

Since Defendants concede that GCM satisfied the employee-numerosity requirement in 2016, the Court need not consider Dudding's declaration to resolve summary judgment on that particular issue. As for Dudding's statements about whether Vijay and/or Nevin Dewar used vulgar language, those allegations relate to the issue of whether Vijay or Nevin Dewar exhibited any national origin-based animus. However, as discussed *infra* Section II(B)(1), a discrimination claim based on national origin is not actionable under § 1981, and this Court need not consider Dudding's statements to resolve summary judgment on that issue. To the extent that Dudding's declaration is proffered to raise questions about Vijay or Nevin Dewar's credibility, the Court finds Dudding possesses the personal knowledge necessary to support his personal observations

10

about any offensive language used by Vijay or Nevin Dewar. Any issues relating to Dudding's credibility belong to a factfinder. The Court declines to strike Dudding's affidavit, but notes the declaration carries little overall weight in this Court's subsequent summary judgment analysis.

### 4. Sue Freeman Affidavit (Doc. #145-33)

Defendants characterize Sue Freeman's affidavit as a "rambling personal attack" on Nevin Dewar and move to strike it entirely because it is "offensive, irrelevant, immaterial, conjectural and hyperbolic" and contains inadmissible hearsay. (Doc. #15, p. 6). Teegarden argues Freeman's affidavit is relevant because it responds to issues raised in the Patty Marshall affidavit submitted by Defendants, which alleges that Teegarden mistreated some tenants living at GCM-managed properties. Teegarden also contends that Freeman's account of her personal interactions with Teegarden about the GCM work environment are relevant because they relate to and corroborate Teegarden's own allegations regarding her hostile work environment claim.

While the parties dedicate significant time and energy debating the admissibility and relevance of Freeman's affidavit, the Court finds that it can decide summary judgment without considering the Freeman affidavit. In turn, it is unnecessary for this Court to examine Freeman's affidavit line-by-line to determine if each factual statement can be presented in admissible form at trial. To the extent Defendants demand that Freeman's affidavit must be wholly stricken from the record, Teegarden submitted the Freeman affidavit to raise an issue of credibility. It is not this Court's task, at this stage, to weigh conflicting evidence or make credibility determinations; those are tasks that belong to a jury.

In sum, Defendants' motion to strike is denied.

**B. Motion for Summary Judgment**

Defendants move for summary judgment on all Counts raised by Teegarden in her second amended complaint. For the reasons discussed below, Defendants' motion is granted as to Count I (§ 1981 claim) but denied as to Count II (Hostile Work Environment), Count III (Retaliation), and Count IV (Assault and Battery).

**1. Count I: National Origin Discrimination and Harassment Under § 1981**

Section 1981 prohibits racial discrimination in the making and enforcing of contracts.[6] The protections afforded by § 1981 extend to white and nonwhite individuals. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286–87 (1976) ("the language and history of [§] 1981 convinces us that [§] 1981 is applicable to racial discrimination in private employment against white persons"); *see also Meyers v. Ford Motor Co*., 659 F.2d 91, 93 (8th Cir. 1981). "Section 1981 protects identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052–53 (8th Cir. 2011) (internal quotation marks and citation omitted). "Section 1981 does not authorize discrimination claims based on national origin." *Id.* (citing *Zar v. S.D. Bd. of Exam'rs of Psychologists*, 976 F.2d 459, 467 (8th Cir. 1992)).

Defendants argue Teegarden's national origin discrimination and harassment claim must fail because § 1981 does not apply to or provide a remedy for discrimination based on national origin. Teegarden disagrees, arguing the protections of § 1981 apply to American workers and that Defendants, who are of Indian descent, specifically exhibited animus toward her and other

---

[6] 42 U.S.C. § 1981(a) states, in relevant part: "[a]ll persons within the jurisdiction of the United States shall have the same right in every state . . . to make and enforce contracts . . . as enjoyed by white citizens." Section 1981 defines the term "make and enforce contracts" as "the making, performance, modification, and termination of contracts and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

12

employees because they were "American."  The Court finds that Teegarden's § 1981 claim must fail as a matter of law.  The Eighth Circuit does not recognize a § 1981 claim for discrimination based solely on a claimant's national origin.  *See Torgerson*, 643 F.3d at 1053.  America is Teegarden's country of origin, not her race or ethnicity.  Moreover, while her second amended complaint does contain some allegations of racially-motivated harassment, Teegarden does not cite to or identify any specific facts to support those allegations, nor does she argue Defendants discriminated against her because she is white.  To survive summary judgment, the nonmovant cannot simply rely on allegations made in the complaint, but instead "must identify and provide evidence of specific facts creating a triable controversy."  *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004) (internal quotation marks and citation omitted).  For these reasons, Defendants are entitled to summary judgment on Count I.

### 2.  Count II: Hostile Work Environment in Violation of the ADA

Title I of the ADA prohibits employers from discriminating against qualified individuals with a disability on the basis of that disability.  *See* 42 U.S.C. § 12112.  In the Eighth Circuit, hostile work environment claims arising from disability-based harassment are cognizable under the ADA.  *Shaver v. Indep. Stave Co.*, 350 F.3d 716, 719 (8th Cir. 2003).  "Courts often look to case law developed under Title VII for direction in interpreting similar [statutory] terms under the ADA."  *Donnelly v. St. John's Mercy Med. Ctr.*, No. 4:08-CV-347-CAS, 2008 WL 2699859, at *2 (E.D. Mo. June 30, 2008).  While Teegarden's Count II in her second amended complaint alleges both disability-based discrimination and harassment, in opposing summary judgment Teegarden only argues that she endured a hostile work environment.

13

### a. GCM's Status as an Employer Subject to Provisions of the ADA

A threshold issue raised by Defendants is whether GCM is an employer subject to the ADA during the relevant time period underlying Teegarden's ADA-based claims. As with other federal antidiscrimination laws, the ADA "is inapplicable to very small businesses." *Clackamas Gastroenterology Assoc., P.C. v. Wells*, 538 U.S. 440, 441 (2003). An employer is amenable to suit under the ADA if its workforce contains fifteen or more employees for each working day in each of twenty or more calendar weeks during the current or preceding calendar year.[7] 42 U.S.C. § 12111(5)(A). The relevant time period for evaluating whether an employer meets the ADA's "numerosity" requirement is the calendar year in which the alleged discriminatory act occurred and the preceding calendar year. *Walters v. Metro. Educ. Enterprises, Inc.*, 519 U.S. 202, 205 (1997) (determining the years relevant to considering whether an employer was subject to the provisions of Title VII are the year of the alleged discriminatory act and the year prior).

### i. Relevant Timeframe for Evaluating Employer Status

The parties dispute which years are relevant for determining whether GCM employed at least fifteen employees for each working day in twenty or more calendar weeks. Defendants argue only 2018 (the "current" year) and 2017 (the "preceding" year ) are relevant because 2018 is the year when Defendants allegedly fired Teegarden, the act which forms the basis of her unlawful retaliation claim. Teegarden disagrees, contending that she also endured a hostile work environment arising from conduct that began in 2016 and continued through 2018, making 2016

---

[7] The relevant statutory language in 42 U.S.C. § 12111(5)(A) defines "employer" as:

> [A] person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years following the effective date of this subchapter, an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person.

Case 4:18-cv-00554-SRB   Document 154   Filed 04/23/20   Page 14 of 37

(the "current year") and 2015 (the "preceding year") the relevant timeframe. In their reply brief, Defendants argue Teegarden's alleged harassment only took place between December 2017 and January 2018, and they urge this Court to construe "calendar year" as the twelve-month window immediately preceding and following Teegarden's alleged harassment.

Regarding the preliminary question of which specific time period constitutes a "calendar year" under the ADA, the Court declines to use the method proposed by Defendants. Defendants do not cite any controlling legal authority to support its argument that a court may construe the term "calendar year" to mean the consecutive twelve-month period immediately preceding or following an alleged act of disability-based discrimination, rather than a January 1st–December 31st time period. Courts evaluating employer status under the ADA consistently analyze the relevant "calendar year" in its entirety. *See, e.g.*, *Walters*, 519 U.S. at 205; *Cameron v. Mid-Continent Livestock Supplements, Inc.*, 211 F.Supp.2d 1120, 1125–26 (E.D. Mo. 2002); *Pawlowski v. Scherbenske*, 891 F.Supp.2d 1077, 1084 (D. S.D. 2012); *Cochran v. Seniors Only Fin., Inc.*, 209 F.Supp.2d 963, 967 (S.D. Iowa 2002). Moreover, the Eighth Circuit previously rejected the assertion that "calendar year" meant "any period of twelve consecutive calendar months and not the period from January 1 through December 31" in an age-discrimination context.[8] *McGraw v. Warren Cty. Oil Co*., 707 F.2d 990, 991 (8th Cir. 1983) (per curiam). In turn, this Court will evaluate a relevant "calendar year" on a January 1st–December 31st basis.

As for which "current" and "preceding" calendar years are relevant in this case, the Court finds 2015, 2016, 2017, and 2018 are the relevant years for evaluating whether GCM employed at least fifteen employees for each working day in twenty or more calendar weeks. In addition to

---

[8] The Age Discrimination Employment Act ("ADEA"), 29 U.S.C. § 630(b), defines "employer" "in precisely the same way Title VII does." *Walters*, 519 U.S. at 207; *see generally Lenhardt v. Basic Inst. of Tech., Inc.*, 55 F.3d 377, 380 (8th Cir. 2020).

her retaliation claim Teegarden allegedly endured a hostile work environment, which courts view as a single unlawful practice even though it may encompass discrete acts of harassment over time. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002); *Moses*, 894 F.3d at 920. Teegarden claims that a hostile work environment arose due to multiple instances of disability-motivated harassment by both Vijay and Nevin Dewar, including derogatory comments, verbal abuse, and an instance of physical assault. Since those discrete incidents are viewed as a single discriminatory act, any year when the alleged harassment took place is a "current year" relevant to determining if GCM satisfied the ADA's employee-numerosity requirement. *See* 42 U.S.C. § 12111(5)(A); *see, e.g.*, *Powers v. Avondale Baptist Church*, No. 3:06-CV-363-J-34-MCR, 2009 WL 10698424, at *2 n.9 (M.D. Fla. Sept. 18, 2009), *aff'd*, 393 F. App'x 656 (11th Cir. 2010) (holding in a Title VII hostile-work-environment context that the relevant timeframe for evaluating employee numerosity is any year when an alleged incident of harassment occurred).

Viewing the facts in a light most favorable to Teegarden, the record contains evidence showing the alleged disability-based harassment by Vijay and Nevin Dewar took place over the course of Teegarden's employment. While the exact dates of each alleged harassing act are not clearly identified, there is evidence indicating acts of harassment took place during 2016, 2017, and 2018. In turn, the relevant "current or preceding calendar year" is 2015–2018.

### ii. Numerosity

Since the relevant timeframe for determining the ADA's numerosity requirement is 2015–2018, Teegarden must produce evidence showing the numerosity requirement is met for either the "current or preceding calendar year" when the discriminatory act occurred. 42 U.S.C. § 12111(5)(A). The "ultimate touchstone" of this analysis is whether a given employer had an employment relationship with fifteen or more individuals during the operative period of time.

16

*Walters*, 519 U.S. at 212. In *Walters*, the U.S. Supreme Court endorsed the "payroll method" test for determining numerosity in a Title VII context, a method which counts the number of employees maintained on an employer's payroll in any given week during a relevant time period. *Id.* at 206–07; *Bradley v. Monarch Constr., Inc.*, 35 F. App'x 420, 421 (8th Cir. 2002).

In their reply, Defendants concede "that GCM had 15 or more employees for 20 or more weeks in the calendar year January 1, 2016 through December 31, 2016." (Doc. #150, p. 3). As previously stated, the record evidence indicates Teegarden endured acts of harassment in 2016. Given that the language of 42 U.S.C. § 12111(5)(A) requires an employer have at least fifteen employees in the "current *or* the preceding calendar year," GCM's concession that it satisfied the employee-numerosity requirement in 2016 is sufficient for Teegarden to survive summary judgment on this specific element of her ADA-based claims.

### b. Hostile Work Environment Due to Disability-Based Harassment

To succeed on her hostile work environment claim due to harassment on account of her disability, Teegarden must show: (1) she is disabled; (2) she suffered unwanted harassment; (3) the harassment she endured was based on her disability; and (4) the harassment she endured was severe enough to affect the terms, conditions, and privileges of her employment. *Shaver*, 350 F.3d at 720; *see also Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012). The parties do not dispute whether Teegarden is disabled. Defendants argue that any harassment Teegarden allegedly endured was not motivated by her disability, and that the alleged harassment was neither severe nor pervasive. Teegarden disagrees.

### ii. Unwelcome Harassment Based on Disability

Upon review of the summary judgment record, the Court finds a reasonable jury could conclude that Teegarden endured unwelcome harassment because of her disability. The record

shows there is no real factual dispute about whether Teegarden was harassed, though the issue of whether it was severe and pervasive is a separate matter. Teegarden alleges that both Vijay and Nevin Dewar repeatedly criticized, belittled, insulted, cursed at, and called her derogatory names while she was an employee, in addition to Nevin Dewar allegedly threatening and attacking her on December 20, 2017. Kendrick's declaration corroborates Teegarden's deposition testimony and also alleges that Vijay and Nevin Dewar discussed and criticized Teegarden's disability with other employees. Viewing the evidence in a light most favorable to Teegarden and drawing all reasonable inferences on her behalf, a jury could reasonably conclude that Teegarden suffered harassing conduct that was unwelcome.

Defendants also argue Teegarden's workplace treatment had no relation to her disability and that she was not treated differently than other employees. However, some incidents alleged by Teegarden show disability-based animus on their face, such as being called "stupid," "crazy," "bipolar," and a "bipolar schizophrenic psycho bitch." While some of those terms or insults can be used without referring to a person's specific condition or disability, a reasonable jury could find those insults were chosen for Teegarden because of her bipolar diagnosis. *See Shaver*, 350 F.3d at 721 ("[T]he meaning of the statements (that is, what inference to draw from the words used) is properly a matter for the jury."); *Stewart v. Rise, Inc.*, 791 F.3d 849, 861 (8th Cir. 2015) ("To support a hostile-work-environment claim, every instance of unwelcome conduct need not, individually, point to a prohibited animus."). At this stage, there is sufficient evidence showing a genuine issue exists for trial on these two elements of Teegarden's claim.

### iii. Severe and Pervasive

The heart of Teegarden's hostile-work-environment claim is whether the harassment she endured was severe enough to impact the terms, conditions, and privileges of her employment.

18

Defendants contend Teegarden was treated better than any of their other employees and that the complained-of harassment was neither objectively severe nor pervasive. Teegarden argues the harassment she experienced was so persistent and offensive that it greatly impacted her ability to perform her job and eventually forced her to seek out mental health treatment.

"[T]o be actionable, harassment must be both subjectively hostile or abusive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive." *Shaver*, 350 F.3d at 721 (citation and internal quotation marks omitted). "Conduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." *Id.* Whether a work environment is hostile is determined by the totality of the circumstances, such as the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance." *Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1018 (8th Cir. 2011) (citation and internal quotation marks omitted).

The Court finds there is enough evidence upon which a jury could reasonably find for Teegarden on this element of her claim. In *Shaver*, in determining whether the disability-based harassment alleged by the plaintiff was actionable, the Eighth Circuit considered whether the plaintiff had been subjected to verbal abuse, repeatedly singled out by a supervisor, experienced either explicitly or implicitly threatening behavior, or received medical treatment due to the psychological trauma of working in an abusive work environment. 350 F.3d at 721–22. While the *Shaver* factors are not mandatory and represent a more extreme set of circumstances, the record here does contain evidence in each one of those categories. Teegarden allegedly endured ongoing verbal abuse and criticism during her employment, including several incidents in which Vijay or Nevin Dewar singled her out directly or indirectly by instructing her coworkers to not

19

work with her because of her disability. Defendants insist that Teegarden only can identify two specific incidents of verbal abuse and that both took place between December 2017 and January 2018, which is too infrequent to be pervasive. However, Teegarden's testimony and inferences drawn from it suggest the offensive name-calling, insults, and belittling took place throughout her employment, which is also supported by Kendrick's declaration and Teegarden's EEOC complaint. Further, the two incidents of verbal abuse identified by Defendants were allegedly accompanied by either a threat of physical violence or circumstances which, if true, make them particularly humiliating. Lastly, not only are there allegations of physical harm (e.g. when Nevin Dewar shoved a table at Teegarden that struck her and broke two of her fingernails), Teegarden also claims she had to seek out medical treatment due to the extreme stress she experienced from working at GCM. Viewing the facts in a light most favorable to her, the Court finds Teegarden has presented enough evidence to create a genuine issue of material fact on the question of whether she was subjected to severe and pervasive harassment.[9]

Defendants' motion for summary judgment on Count II is denied.

---

[9] Defendants appear to argue that Teegarden never subjectively believed the alleged harassment was hostile because she kept returning to work for GCM, event after she quit or had been fired. Defendants also point to numerous text messages exchanged between Teegarden and members of the Dewar family where she stated how much she "loved," "admired," and "cared" for the Dewars. (Doc. #150, p. 19). However, the Court notes that both of Teegarden's alleged harassers in this case were her supervisors and the owners of GCM. Courts have noted that supervisory harassment is often more intimidating than harassment by a coworker, since the victim is more vulnerable and may have few options for recourse. *See, e.g.*, *Steck v. Francis*, 365 F.Supp.2d 951, 972–73 (N.D. Iowa 2005) (discussing at length the impact of supervisor harassment on the objective and subjective prongs of the severe and pervasive element in a hostile work environment claim). Teegarden also presents alternative explanations for why she continued to return to work for GCM, namely her belief that she was owed money, needed to work, and enjoyed advocating for the tenants. Ultimately, Defendants' arguments raise questions of credibility and require the weighing of evidence, tasks which belong to a jury and do not suggest that Defendants are entitled to summary judgment.

### 3. Count III: Retaliation Under the ADA[10]

In the Eighth Circuit, "a person who is terminated after unsuccessfully seeking an accommodation may pursue a retaliation claim under the ADA, if she had a good faith belief that the requested accommodation was appropriate." *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013).[11] "To prevail on a retaliation claim, there must either be direct evidence of retaliation or an inference of retaliation must be created under the *McDonnell Douglas* burden-shifting framework." *Hustvet v. Allina Health Sys*., 910 F.3d 399, 412 (8th Cir. 2018) (internal quotation and citations omitted) (referencing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Since Teegarden does not argue there is direct evidence of retaliation, to establish her *prima facie* case she must show that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action by the employer; and (3) a causal connection exists between the two. *Hill*, 737 F.3d at 1218. "Under the ADA, a retaliation claim 'requires a but-for causal connection between the employee's assertion of her ADA rights and an adverse action by the employer.'" *Moses*, 894 F.3d at 924 (quoting *Oehmke v. Medtronic, Inc.*, 844 F.3d 748, 758 (8th Cir. 2016)).

---

[10] The Court notes that Teegarden, in opposing summary judgment, does not argue failure to accommodate. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (citing 42 U.S.C. § 12111(8)–(9)) ("The ADA requires employers to make reasonable accommodations to allow disabled individuals to perform the essential functions of their positions."). Nor does Teegarden argue that she was constructively discharged or that GCM terminated her because of her disability. *See Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 943 (8th Cir. 2019) (citation omitted) (To succeed on a constructive-discharge theory, the claimant must show the employer-created working condition was "so intolerable that a reasonable person in [the claimant's] position would have felt compelled to resign."). Accordingly, the Court's analysis is limited to Teegarden's contention that GCM unlawfully terminated her when she requested accommodation.

[11] Defendants insist that Teegarden's retaliation claim fails as a matter of law under *Gilooly v. Mo. Dep't of Health & Sr. Servs.*, 421 F.3d 734 (8th Cir. 2005). Defendants appear to the rely on Judge Colloton's concurrence in *Gilooly*, which discusses the analytical differences between oppositional retaliation and participation retaliation in a Title VII context. *See id.* at 741–43 (Colloton, J., concurring in part). However, Teegarden alleges she was fired because she requested an accommodation, which is cognizable under the Eighth Circuit's ADA precedent, *see Hill*, 737 F.3d at 1218, and thus *Gilooly* is not dispositive.

21

### i. Prima Facie Case for Retaliation

Teegarden argues she demonstrated retaliation because she was terminated following her request to work part-time. Teegarden notes she first requested accommodation for her disability in the form of part-time employment in 2015, when she communicated her desire for part-time work to Kendrick, who then relayed Teegarden's request to Vijay Dewar. Teegarden claims she renewed her accommodation request at some point in 2016 or 2017 by providing a doctor's note to the Dewars indicating her need for part-time work. Teegarden submitted her third and final request for part-time work at some point in late December 2017 or early January 2018, when she told David Stelting, a senior GCM employee and/or supervisor, that she wanted to work part-time.[12] Teegarden was promised a part-time position but upon reporting to work, she learned that Vijay Dewar had informed her fellow coworkers that she was no longer employed by GCM. Shortly thereafter, Teegarden states Vijay Dewar formally terminated her via text message on January 21, 2018.

The Court finds that Teegarden puts forth sufficient evidence to establish her *prima facie* case. "Requesting an accommodation is a protected activity, and termination is certainly an adverse employment action." *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003) (internal citations omitted). Viewing the evidence in a light most favorable to Teegarden, the record would permit a jury to conclude that Teegarden had a good-faith belief that her request for part-time work was appropriate. She previously made the same accommodation request on two

---

[12] The record is unclear regarding when Teegarden requested a part-time position, though she states the request was made following her alleged altercation with Nevin Dewar on December 20, 2017. The parties also dispute whether Teegarden was fired by Vijay Dewar on or around January 21, 2018, or if she quit prior to that date. There remains a genuine factual dispute as to whether Teegarden was in fact employed by GCM on January 21, 2018. Viewing the facts in Teegarden's favor, a reasonable jury could conclude that Teegarden was still employed at GCM on January 21, 2018, and that she in turn suffered an adverse employment action when Vijay Dewar allegedly terminated her via text message.

prior occasions, had received medical advice counseling her to reduce her workload, and when

submitting her third request she indicated that her need for part-time work was due to increased

stress. And, unlike the two prior instances when Teegarden asked for part-time work, Teegarden

accompanied her third request for accommodation with conduct that clearly demonstrated her

intent to reduce her hourly workload going forward. Further, her final request for part-time work

occurred less than a month before Vijay Dewar fired her; those events are close enough in time

to create an inference of causal connection. *See Lors v. Dean*, 746 F.3d 857, 865–66 (8th Cir.

2014) (noting "[t]emporal proximity between the protected conduct and adverse action must be

very close for timing alone to be sufficient" to demonstrate causation). In sum, Teegarden puts

forth enough evidence to satisfy her *prima facie* case. *See Stewart*, 481 F.3d at 1043 (citation

omitted) (describing a plaintiff's evidentiary burden at the prima facie stage as "minimal").

### ii. Non-Retaliatory Reason for Teegarden's Termination and Pretext

Once a plaintiff establishes her *prima facie* case, "the employer has the burden to produce

a non-retaliatory reason for the discharge." *Hustvet*, 910 F.3d at 412. Defendants contend that

Teegarden was fired because she: "(1) had left her office unattended without authority in late

December 2017; (2) had been insubordinate and disrespectful to Vijay Dewar in late 2017; and

(3) had repeatedly failed and refused to comply with the GCM work rules and policy regarding

timekeeping and recordkeeping." (Doc. #126, p. 15). Since GCM proffered legitimate reasons

for firing Teegarden, under the *McDonnell-Douglas* framework the burden of production shifts

back to Teegarden and she must present evidence showing those proffered reasons are pretextual.

*Hustvet,* 901 F.3d at 412.

To survive summary judgment, Teegarden must put forth evidence that "(1) creates a

question of fact as to whether [GCM's] reason was pretextual and (2) creates a reasonable

inference that [GCM] acted in retaliation." *Lors*, 746 F.3d at 867–68 (internal quotation marks and citation omitted). Pretext can be demonstrated in numerous ways, including by "showing that it was unlikely an employer would have acted on the basis of the proffered reason." *Ridout v. JBS USA, LLC*, 716 F.3d 1079, 1084 (8th Cir. 2013); *see also Lors*, F.3d at 868 (noting a claimant may demonstrate a material issue regarding pretext by indirect evidence showing "an employer's proffered explanation is unworthy of credence because it has no basis in fact.").

The Court finds that Teegarden presents evidence upon which a jury could reasonably conclude that GCM's proffered reasons for terminating her are pretextual. Teegarden points to Vijay Dewar's own admission that he never counseled or disciplined Teeagarden for any of the incidents underlying GCM's proffered reasons for firing her. Teegarden also notes that Vijay Dewar never documented any of the alleged problematic behavior she purportedly exhibited over the course of her employment at GCM. Moreover, Vijay Dewar testified in his deposition that he continually tolerated Teegarden's allegedly erratic and disrespectful behavior, behavior which supposedly spanned the duration of her employment with GCM. Together, these facts suggest that GCM's proffered reasons for terminating Teegarden are "unworthy of credence," thereby creating a triable issue of fact as to pretext. *Lors*, 746 F.3d at 868. Furthermore, a jury could reasonably infer from the possible falsity of its proffered reasons that GCM fired Teegarden for a retaliatory purpose. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's [proffered] explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."); *accord. Ridout*, 716 F.3d at 1087. Teegarden also points to conflicting evidence about whether Vijay and Nevin Dewar knew Teegarden had been promised a part-time position beginning on January 6, 2017, arguing that conflict reasonably gives rise to an inference that she

24

was only terminated once it became clear that she would no longer be working full-time. In sum, Teegarden presents more than a mere temporal connection between her accommodation request and her subsequent termination, and thus satisfies her burden of proof under the *McDonnell-Douglas* framework. *See Reeves*, 530 U.S. at 148 ("Thus, plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

Defendants' motion for summary judgment on Count III is denied.

### C. Count IV: Assault and Battery

In Count IV of her second amended complaint, Teegarden raises a common-law assault and battery claim against Nevin Dewar.[13] Defendants argue that Teegarden's assault and battery claims are time-barred by the applicable statute of limitations, as well as claim-barred under the doctrines of res judicata and collateral estoppel. Each argument is addressed in turn below.

#### 1. Statute of Limitations

The events underlying Teegarden's assault and battery claim occurred in Olathe, Kansas, on December 20, 2017, when Nevin Dewar allegedly shoved a table at Teegarden, striking her and breaking two of her fingernails. The parties agree Kansas law applies and that Teegarden's claim is subject to a one-year statute of limitations under Kansas law. *See* Kan. Stat. Ann. § 60-514(b) (one-year statute of limitations for civil assault and battery claims). Since the incident giving rise to her claim occurred on December 20, 2017, Teegarden had to initiate a civil action before December 20, 2018. *See Baska v. Scherzer*, 156 P.3d 617, 622 (Kan. 2007) ("K.S.A. [§]

---

[13] The Count IV caption in Teegarden's second amended complaint indicates the assault and battery claims are raised against both Nevin Dewar and GCM. However, in opposing summary judgment Teegarden does not argue whether GCM may be subject to vicarious liability for Nevin Dewar's alleged conduct. In turn, the Court only considers Teegarden's assault and battery claims to the extent they are raised against Nevin Dewar.

25

60-514(b) provides that civil actions for assault and battery must be initiated within 1 year of the date of the incident giving rise to the action.").

Teegarden filed her original *pro se* complaint on July 23, 2018, and she filed an amended *pro se* complaint on August 10, 2018. Teegarden continued to litigate her case *pro se* until she secured counsel in May 2019. After securing counsel, she filed a second amended complaint on June 6, 2019. The issue is whether Teegarden timely raised her assault and battery claim in her original or amended *pro se* complaints, which she filed within the one-year statute-of-limitations period, or if her assertion of those claims in her second amended complaint are timely under the relation-back doctrine. Defendants argue Teegarden raised her assault and battery claims against Nevin Dewar for the first time in her second amended complaint and contend the relation-back doctrine cannot render her out-of-time claims timely. Teegarden disagrees, arguing she asserted her assault and battery claims in both her original and in her amended *pro se* complaints, which should be construed liberally because of her *pro se* status. In the alternative, she argues that her second amended complaint relates back to her earlier *pro se* complaints.

### a. Teegarden's Original and Amended *Pro Se* Complaints

When filing a complaint, Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). A *pro se* complaint must be liberally construed by a court and "held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In the Eighth Circuit, the liberal construction of a *pro se* complaint "mean[s] that if the essence of an allegation is discernible, even though it is not

pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004). However, a court cannot "supply additional facts" or "construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Keselyak v. Curators of the Univ. of Mo.*, 200 F.Supp.3d 849, 854 (W.D. Mo. 2016) (quoting *Stone*, 364 F.3d at 914).

Defendants argue Teegarden did not "allege expressly or by any reasonable implication" that Nevin Dewar committed an assault or battery in her original or amended *pro se* complaints. (Doc. #126, p. 16). The Court agrees. When Teegarden filed her original *pro se* complaint, the only causes of action she identified were alleged violations of Title VII, the Age Discrimination in Employment Act, and the ADA. (Doc.#1-1, pp. 3–4). When Teegarden filed her amended *pro se* complaint, this Court determined that she asserted "causes of action against [GCM] for race, gender, religion, age, and disability discrimination." (Doc. #9, p. 1). While her original and amended *pro se* complaints do contain factual allegations that plausibly support an assault and/or battery claim, the Court declines to construct a cause of action vaguely raised by those facts at this stage of the proceeding. *See Walton v. Pennington*, No. 4:14-CV-1804-CAS, 2016 WL 5076181, at *3 (E.D. Mo. Sept. 14, 2016) (citing *Giles v. Wal–Mart Dist. Ctr.*, 359 F. App'x. 91, 93 (11th Cir. 2009)) (declining to "act as counsel for plaintiff" or to "rewrite" the plaintiff's complaint "to create a sustainable claim"). In turn, the Court must look to Teegarden's second amended complaint.

27

### b. Teegarden's Second Amended Complaint and Relation Back

In her second amended complaint, filed on June 6, 2019, Teegarden re-joined Nevin

Dewar as a defendant and asserted her battery and assault claims against him.[14]  Since her second

amended complaint was filed outside the Kansas one-year statute of limitations, those later-

added claims are time-barred unless Teegarden's second amended complaint relates back to

either her original or amended *pro se* complaint, which were both timely filed.  Because the

amendments she made to her second amended complaint add Nevin Dewar as a defendant and

assert a new cause of action against him, Rule 15(c) controls the relation-back analysis.[15]

Under Rule 15(c)(1)(C), an amended complaint relates back to the date of the original

complaint when:

> (1) the claim . . . asserted in the amended complaint arises out of the same conduct,
> transaction, or occurrence set out in the initial complaint, (2) within 90 days after
> the original complaint was filed, the party to be added "received such notice of the

---

[14] Though Nevin Dewar was joined as an individual party to this case by the assault and battery claims raised against him in the second amended complaint, he was an original defendant to this suit when it was first commenced. Teegarden named both Vijay Dewar and Nevin Dewar individually in her original and amended *pro se* complaints.  This Court later dismissed any claims individually raised against Vijay Dewar or Nevin Dewar upon determining that neither could be held individually liable for Teegarden's discrimination claims under the ADA.

[15] The parties' briefing relies upon different legal authorities, though neither side directly addresses the conflict of which authority should govern the relation-back analysis.  Defendants argue Teegarden's assault and battery claims do not relate back under Kan. Stat. Ann. § 60-215(c), the Kansas rule governing amended pleadings.  In their reply, Defendants rely on Missouri caselaw interpreting Rule 55.33(c), the Missouri Rule of Civil Procedure governing amended pleadings, to support their argument.  Teegarden's argument relies on the Federal Rules of Civil Procedure, specifically Rule 15(c), which governs the relation-back analysis in situations where a new party is added to a civil action in federal court.  The Court finds Rule 15(c) governs the relation-back analysis in this case.  *See Capers v. Amtrak*, 673 Fed. App'x 591, 594 (8th Cir. 2016) (citing *Jones ex rel Jones v. Corr. Med. Servs., Inc*., 401 F.3d 950, 952 (8th Cir. 2005)) (noting district courts generally apply federal law on "procedural" matters like the amendability of a complaint); *see also Brown v. E.W. Bliss Co*., 818 F.2d 1405, 1408–09 (1987); *accord. Estate of Kout v. United States*, 241 F.Supp.2d 1183, 1191 (D. Kan. 2002) ("When a complaint is filed in federal court . . . the matter of relation back of amendments to pleadings is governed by the Federal Rules of Civil Procedure."). Regardless, the outcome under either Rule 15(c) or Kan. Stat. Ann. § 60-215(c) is the same.  *See Loveall v. Employer Health Servs., Inc.*, 196 F.R.D. 399, 404 n.3 (D. Kan. 2000) (quoting *Marr v. Geiger Ready-Mix Co.*, 495 P.2d 1399, 1404 (Kan. 1972)) ("As noted by the Kansas Supreme Court, "federal decisional law construing Federal Rule No. 15(c) . . . is authoritative in construing [K.S.A.] 60–215(c)[.]'").

action that it will not be prejudiced in defending on the merits," and (3) upon receiving notice, the party to be added "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."

*Heglund v. Aitkin Cty.*, 871 F.3d 572, 578–79 (8th Cir. 2017) (quoting Fed. R. Civ. P. 15(c)(1)(C)). "When those conditions are satisfied, the amended complaint is treated as if it were filed on the date of the original complaint." *Id.* (citing *Hayes v. Faulkner Cty.*, 388 F.3d 669, 675–76 (8th Cir. 2004)). "Since the purpose of Rule 15(c) is to permit cases to be decided on their merits, it has been liberally construed." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543 (8th Cir. 1996) (internal citations omitted).

Defendants argue Teegarden's second amended complaint cannot relate back because it does not arise out of the same transactions or occurrences alleged in her earlier complaints, nor did she fail to join Nevin Dewar individually due to mistake. Teegarden disagrees, contending her assault and battery claims arise directly from the same facts she detailed in her original and amended *pro se* complaints. Defendants do not dispute that Nevin Dewar received fair notice of Teegarden's assault and battery action under Rule 15(c)(1)(C)[16] or that he is prejudiced in defending himself against those claims under Rule 15(c)(1)(C)(i). For the reasons discussed below, the Court finds Teegarden's second amended complaint relates back to her original and amended *pro se* complaints.

### i. Same Transaction or Occurrence: Rule 15(c)(1)(C) & Rule 15(c)(1)(B)

The Court finds Teegarden's assault and battery claims arise from the "same conduct, transaction, or occurrence" set out in her original and amended *pro se* complaints. Fed. R. Civ. P. 15(c)(1)(C), 15(c)(1)(B). "To arise out of the same conduct, transaction, or occurrence, the

---

[16] Rule 15(c)(1)(C) specifically permits relation back if the requirements of Rule 15(c)(1)(C)(i)-(ii) are satisfied "within the period provided by Rule 4(m) for serving the summons and complaint."

claims must be tied to a common core of operative facts." *Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015) (citation omitted). Here, Teegarden alleges the exact same conduct by Nevin Dewar in each of her complaints. In her original *pro se* complaint, Teegarden alleged "I was pushed by Nevin in the office" and "[o]n Dec. 20, 2017, I was attacked physically and mentally abused by Nevin Dewar [at] 16645 W. 139th St. Olathe, Kansas [at] 1pm." (Doc. #1-1, p. 6). In her amended *pro se* complaint, Teegarden alleges "Dec. 20th I was attacked by both owners [at] 2 property locations." (Doc. #7, p. 5). In her second amended complaint, Teegarden alleges that "[o]n December 20, 2017, Nevin Dewar pushed a table into her" and "[a]s a result, two of [her] fingernails were broken, as well as a piece of her property." (Doc. #85, ¶ 62). While her second amended complaint raises a different theory of recovery, that theory relies on the same operative facts alleged in the timely-filed *pro se* complaints. *See Maegdlin v. Int'l Ass'n of Machinists & Aerospace Workers, Dist.* 949, 309 F.3d 1051, 1052 (8th Cir. 2002) ("[R]elation back has been permitted of amendments that change the legal theory of the action."). Moreover, the alleged facts in Teegarden's original and amended *pro se* complaints were specific enough to put Nevin Dewar on notice of the factual basis for her assault and battery claims. *See Taylor*, 792 F.3d at 869 (citation and internal quotation marks omitted) ("New claims must arise out of the same set of facts as the original claims, and the facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim."). Accordingly, the assault and battery claims in Teegarden's second amended complaint arise from the same conduct she set out in her earlier, timely-filed *pro se* complaints.

### ii. Defendant's Knowledge of Mistaken Identity: Rule 15(c)(1)(C)(ii)

Teegarden must also show that Nevin Dewar "knew or should have known that the action would have been brought against [him], but for a mistake concerning the proper party's identity."

Fed. R. Civ. P. 15(c)(1)(C)(ii). Rule 15(c)(1)(C)(ii) thus has two requirements that must be met: (1) a mistake of identity, and (2) actual or constructive knowledge that the action would have been brought against the newly added party but for the mistake. *Heglund*, 871 F.3d at 578–79. "Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) (emphasis in original).

As to the knowledge requirement, Defendants do not dispute that Nevin Dewar knew or should have known that Teegarden's assault and battery claims would be brought against him. Moreover, given that Nevin Dewar has been fully aware of the factual basis for Teegarden's assault and battery claims since this lawsuit's inception, any argument that he did not know those claims would have been brought against him fails. As for the mistake requirement, Defendants argue the second amended complaint cannot relate back because Teegarden did not "provide a rational basis to explain and justify her failure to sue Nevin Dewar, individually, for battery until after the statute of limitations has expired." (Doc. #150, p. 22). Teegarden does not address the mistake requirement under Rule 15(c) but emphasizes that the facts underlying her assault and battery claims were raised at the very onset of this litigation, giving Nevin Dewar ample notice.

"Under Rule 15(c), relation back is permitted only when the action originally is brought against the wrong person because of a 'mistake.'" *Heglund*, 871 F.3d at 581. The Eighth Circuit adopted the following definition of "mistake" in a Rule 15(c) context, drawn directly from the U.S. Supreme Court's reasoning in *Krupski v. Costa Crociere*:

> The [Supreme] Court defined mistake as "[a]n error, misconception, or misunderstanding; an erroneous belief." It also described a mistake as "a misunderstanding of the meaning or implication of something"; "a wrong action or

> statement proceeding from faulty judgment, inadequate knowledge, or inattention";
> "an erroneous belief"; or "a state of mind not in accordance with the facts."

*Id.* at 579 (quoting *Krupski*, 560 U.S. at 548–49) (internal citations omitted). The Eighth Circuit also recognized that "a mistake occurs if a plaintiff knows that two or more parties exist but chooses to sue the wrong one based on a misunderstanding about that party's status or role." *Id.* (citing *Krupski*, 560 U.S. at 549). The Court finds this case falls well within the Eighth Circuit's definition of "mistake," particularly since Teegarden named Nevin Dewar as an individual defendant in her original and amended *pro se* complaints and those complaints set forth the very same factual allegations that underlie her assault and battery claims. This outcome is reinforced by the overriding purpose of Rule 15(c), which is "to permit cases to be decided on their merits" rather than by procedural technicalities. *Alpern*, 84 F.3d at 1543. When Teegarden initially filed her lawsuit and set forth her allegations regarding the altercation on December 20, 2017, Nevin Dewar received "all the notice that statutes of limitations were intended to provide." *Maegdlin*, 309 F.3d at 1052.

The Court finds Teegarden's second amended complaint relates back to her original and amended *pro se* complaints, and thus her assault and battery claims are not time-barred.

## 2. Claim and Issue Preclusion

Defendants argue Teegarden's assault and battery claims are barred by the doctrines of res judicata and collateral estoppel. Prior to filing the instant suit, Teegarden sought an order of protection from stalking against Nevin Dewar in Kansas state court pursuant to Kan. Stat. Ann. § 60-31a01 *et seq.*[17] (Doc. #125-12, pp. 3–6). Defendants contend Teegarden's prior pursuit of

---

[17] Under Kan. Stat. Ann. § 60-31a04(a), "[a] person may seek relief under the protection from stalking, sexual assault or human trafficking act by filing a verified petition with any judge of the district court or clerk of the court." The petition must allege facts sufficiently showing:

> (1) The name of the stalking victim, sexual assault victim or human trafficking victim;
> (2) the name of the defendant;

a protection order prevents her from re-litigating her assault and battery claims against Nevin
Dewar in this lawsuit. Teegarden disagrees.

### a. Res Judicata (Claim Preclusion)

The Full Faith and Credit Statute requires federal courts to give preclusive effect to state-
court judgments "whenever the courts of the State from which the judgments emerged would do
so." *Laase v. Cty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (citation and internal quotation
marks omitted); *see* also 28 U.S.C. § 1738. In determining whether Teegarden's assault and
battery claims are claim-barred, this Court must look to the law of the forum that rendered the
first judgment. *Duffner v. City of St. Peters*, 930 F.3d 973, 976 (8th Cir. 2019); *see also Knutson
v. City of Fargo*, 600 F.3d 992, 996 (8th Cir. 2010) ("According to the terms of the full-faith-
and-credit-statute, we apply state preclusion law in our analysis."). Since Teegarden sought her
civil protection order in Kansas state court, we must look to Kansas state law. In Kansas, res
judicata prevents a party from re-litigating a previously-litigated claim and has four elements:
"(1) the same claim; (2) the same parties; (3) claims that were or could have been raised; and (4)
a final judgment on the merits." *Cain v. Jacox*, 354 P.3d 1196, 1199 (Kan. 2015). An exception
applies "if the party seeking to avoid preclusion did not have a full and fair opportunity to litigate
the claim in the prior suit." *Rhoten v. Dickson*, 223 P.3d 786, 797 (Kan. 2010). "To establish
that res judicata bars a plaintiff's claims, a defendant bears the burden of presenting sufficient

---

(3) the dates on which the alleged stalking, sexual assault or human trafficking behavior
occurred; and
(4) the acts committed by the defendant that are alleged to constitute stalking, sexual assault
or human trafficking.

Kan. Stat. Ann. § 60-31a04. Once filed, a court must hold a hearing within 21 days "at which the plaintiff
must prove the allegation of stalking, sexual assault or human trafficking by a preponderance of the
evidence and the defendant shall have an opportunity to present evidence on the defendant's behalf." Kan.
Stat. Ann. § 60-31a05.

evidence on each element." *Klaassen v. Atkinson*, 348 F.Supp.3d 1106, 1158 (D. Kan. 2018) (citing *Spiess v. Meyers*, 483 F.Supp.2d 1082, 1089 (D. Kan. 2007)).

Defendants argue that Teegarden's assault and battery claims are barred by res judicata because they "were litigated as requisite elements of her Petition for an Order of Protection" and ultimately rejected by the state-court judge who ruled in Nevin Dewar's favor. (Doc. #126, p. 18). Teegarden argues her assault and battery claims are not the same claim that was litigated in her state-court civil protection action, nor were they fully litigated during that proceeding.

The Court finds that Defendants cannot establish all the requisite elements of res judicata. Under Kansas law, a claim is identical if the plaintiff "makes the same argument and relies upon the same operative facts as in his prior case." *Klaassen*, 348 F.Supp.3d at 1158. In this case, Teegarden's assault and battery claims rely upon different arguments and facts than her civil protection proceeding. A civil protection order proceeding is premised on the defendant's threat of future harm—the court must determine if the defendant's actions constitute stalking and, if so, whether the petitioner's fear for her future personal safety is reasonable under the circumstances. *See* Kan. Stat. Ann. § 60-31a04(a); *Wentland v. Uhlarik*, 159 P.3d 1035, 1041 (Kan. Ct. App. 2007) (evaluating if defendant's conduct would cause a reasonable person to experience fear for her personal safety). In contrast, an assault or battery claim seeks relief for prior harms allegedly committed by a defendant. For an assault, the alleged injury is "an immediate apprehension of bodily harm" caused by "an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another." *Baska*, 156 P.3d at 622 (citations omitted). For a battery, the alleged injury is "a harmful or offensive contact" caused by "the unprivileged touching or striking of one person by another, done with the intent of bringing about either a contact or an apprehension of contact." *Id.* (citation omitted). The argument in Teegarden's state-court proceeding—whether

34

Nevin Dewar stalked her and posed an imminent risk of future harm to Teegarden—is entirely different from whether he previously committed an assault or battery against her. Teegarden is therefore not attempting to litigate the "same claim" that she pursued in her state-court protective action, and her assault and battery claims are not barred by res judicata.[18]

### b. Collateral Estoppel (Issue Preclusion)

Collateral estoppel is a related but distinct doctrine from res judicata, designed to prevent re-litigation of "the same issue between the same parties, even when raised in a different claim or cause of action." *Matter of Sigler*, 448 P.3d 368, 376 (Kan. 2019). Again, this Court applies the preclusion law of the forum that rendered the first judgment. *Duffner*, 930 F.3d at 976; *Knutson*, 600 F.3d at 996. In Kansas, "[t]he requirements of collateral estoppel are: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties must be the same or in privity; and (3) the issue litigated must have been determined and necessary to support the judgment." *Waterview Resol. Corp. v. Allen*, 58 P.3d 1284, 1290 (Kan. 2002) (citing *Regency Park v. City of Topeka,* 981 P.2d 256, 265 (Kan. 1999)). Defendants have the burden of proof on each required element. *Spiess*, 483 F.Supp.2d at 1090.

Defendants contend that Teegarden's assault and battery claims are barred by collateral estoppel, arguing that Teegarden "had to prove one or more instances of threat and/or attempt to injure or actual injury" to pursue an order of protection. (Doc. #150, p. 23). Teegarden insists

---

[18] Since Defendants cannot satisfy the first element of their res judicata defense, the Court declines to examine the remaining elements. However, the Court notes that even if Defendants could satisfy each element, Teegarden would still prevail given that the record indicates her assault and battery claims were not fully or fairly litigated during the state-court proceeding. *Rhoten*, 223 P.3d at 799 ("When determining whether a claim was fully and fairly litigated, federal courts consider the following factors: (1) whether there were significant procedural limitations in the prior proceeding; (2) whether the party had the incentive to fully litigate the issue; and (3) whether effective litigation was limited by the parties' nature or relationship.").

35

the issue of whether Nevin Dewar posed a future risk of imminent harm is "an entirely different issue than whether he intentionally threatened her or made an offensive bodily contact with her on December 20, 2017." (Doc. #145, p. 56). Teegarden also argues the issue of whether Nevin Dewar committed an assault or battery was not fully litigated in the state-court proceeding.

The Court finds that Defendants cannot establish all the necessary elements of collateral estoppel. As discussed previously, the issue of whether Nevin Dewar previously committed an assault and battery against Teegarden is a different issue than whether Nevin Dewar's conduct constituted stalking and posed a risk of imminent harm to Teegarden within the meaning of Kan. Stat. Ann. § 60-31a01 *et seq.* Since there is no prior judgment on the merits determining Nevin Dewar's liability for Teegarden's assault and battery claims, raising those claims in this case is not an attempt to litigate "the same issue between the same parties." Further, aside from their general reference to the Kansas statutes which authorize the issuance of civil protection orders, Defendants do not cite any legal authority or produce any evidence supporting their collateral estoppel argument. Defendants thus fail to satisfy their burden of proof on this defense.

In sum, Teegarden's assault and battery claims are not barred by either res judicata or collateral estoppel. Further, the factual record, viewed in a light most favorable Teegarden, demonstrates a genuine factual dispute exists as to whether Nevin Dewar committed an assault or battery against Teegarden. In turn, Defendants' motion for summary judgment on Count IV is denied.

## IV. CONCLUSION

Accordingly, Defendants' Motion to Strike (Doc. #151) is DENIED and Defendants' Motion for Summary Judgment (Doc. #125) is GRANTED IN PART and DENIED IN PART. Count I

of Teegarden's second amended complaint is dismissed, while Count II, Count III, and Count IV survive.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
United States District Judge

Dated: April 23, 2020